IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JENNIFER MOSCHETTI, ) | |
|     *Plaintiff*, ) | |
| v. ) | Civil Action No.: 3:22-cv-24-HEH |
| ) | |
| OFFICE OF THE INSPECTOR ) | |
| GENERAL, *et al.*,[1] ) | |
|     *Defendants*. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY**

On December 20, 2021, Plaintiff Jennifer Moschetti filed an action in the Circuit Court for the City of Richmond under § 2.2-3006(B) of the Virginia State Grievance Procedure ("VSGP"). More specifically, Moschetti's state-court action seeks to overturn her termination as "contradictory to law" on various grounds, including that it violates the Virginia Fraud and Abuse Whistle Blower Protection Act ("WBPA"), Va. Code §§ 2.2-3009 *et seq*. (*See* ECF No. 19-11.) In rapid succession, Moschetti filed this action on January 14, 2022, hoping to litigate the same facts and issues in multiple forums simultaneously. As suggested by this Court in its ruling on Defendants' Motion to Dismiss, there are compelling reasons why this action and Moschetti's state-court action should not continue in tandem. (*Cf.* Mem. Op., ECF No. 32, at 20 n. 12.)

As an initial matter, staying the instant case pending the outcome of Moschetti's state-court action will serve judicial economy. By way of illustration, and not limitation, once confirmed in a final state-court judgment, the factual findings and legal determinations made in conjunction with Moschetti's grievance case will likely have a preclusive effect on the remaining claims before

---

[1] By Order dated August 11, 2022, and for the reasons stated in the corresponding Memorandum Opinion issued on the same day, the Court dismissed the Commonwealth of Virginia, the Office of the Inspector General ("OSIG"), and Kate Hourin—OSIG's Communication Director—as Defendants in this case. (*See* ECF Nos. 32 and 33.)

this Court. In addition, staying the instant action aligns with the abstention principles underlying the *Colorado River* doctrine. Indeed, Count III of the Amended Complaint seeks the same relief and remedies under the WBPA that Moschetti is concurrently pursuing in state court. Not surprisingly, the WBPA expressly recognizes application of the VSGP and provides qualifying state employees—like Moschetti—the option of initiating whistleblower retaliation claims and available relief under the WBPA "through" the VSGP. See Va. Code § 2.2-3012(A). As a natural consequence, the outcome of Moschetti's pending state-court action will completely resolve Count III of the Complaint. And that outcome will necessarily impact adjudication of this action as a whole moving forward.

Accordingly, Defendants Michael C. Westfall, Brian Moran, and Clark Mercer (collectively the "Defendants") respectfully request this Court stay the instant case pending the outcome of the parallel state-court action filed by Moschetti. Alternatively, this Court should dismiss Count III outright in light of the *Colorado River* doctrine because the determinative issues of that claim will be conclusively resolved in state court.

## I.  BACKGROUND

On March 22, 2021, OSIG terminated Moschetti's employment as a hotline investigator after confirming at least twenty-five (25) instances of transmitting highly sensitive and confidential investigative materials, in violation of internal and state policy. (*See* Am. Compl. ¶ 49.) On March 31, 2021, Moschetti filed a Grievance Form A challenging her termination under the VSGP. (*See* ECF No. 19-7.) Among other things, Moschetti alleged that she was a protected whistleblower and, thus, was terminated in violation of Va. Code § 2.2-3011. (*See id.*) On April 7, 2021, an administrative hearing officer (the "Hearing Officer") was appointed by the Supreme Court of Virginia to decide the merits of Moschetti's termination grievance. (ECF No. 19-8.)

On September 15-16, 2021, the parties presented evidence, called and cross-examined numerous witnesses, and presented arguments to the Hearing Officer. During that hearing, Moschetti conceded, under oath,[2] that she sent confidential information to her personal email address on numerous occasions, which included, among other things: mental health information of various incarcerated offenders, identifying information of crime victims, witnesses to crimes, and other individuals involved in Board matters. (*Id.* at 6-10.) Moschetti also conceded that her actions violated OSIG confidentiality policies, and that she was ultimately responsible for the information leaked to the media. (*Id.*) On October 4, 2021, the Hearing Officer issued a written decision upholding Moschetti's termination and finding that "[Moschetti] does not qualify as a whistleblower under [Va. Code § 2.2-3011]" for the following reasons:

1. OSIG's security concerns and investigation into the leak of confidential information preceded Moschetti's purported whistleblower report.

2. Moschetti admitted that her disclosure of confidential information violated state and OSIG policy and that she bore responsibility for the subsequent disclosure to the media.

3. Moschetti's "purported whistleblower report was not made in 'good faith' because it was intended to protect her from discipline for her earlier policy violations."

4. Moschetti's purported whistleblower report did not "identify any alleged 'wrongdoing' or 'abuse' within the scope of [Va. Code § 2.2-3011]."

(*See id.* at 6-7, 10-11.)

On October 19, 2021, pursuant to Va. Code § 2.2-3006(A), Moschetti filed a request with the Department of Human Resource Management's Office of Employment Dispute Resolution

---

[2] A transcript of Moschetti's sworn testimony is available for inspection upon request. The parties to the grievance proceeding entered into a stipulation to prevent further publication of OSIG's confidential investigative materials, which Defendants believe does not prevent the Court from reviewing Moschetti's testimony. However, in an abundance of caution, Defendants are relying on the Hearing Decision, which accurately describes Moschetti's testimony, in lieu of the transcript.

("EDR") seeking administrative review of the Hearing Decision, based on the following alleged errors:

1. The Hearing Officer erred in concluding that the Grievant was not a "whistleblower" under the Virginia Fraud and Abuse Whistle Blower Protection Act ("WBPA") at Va. Code § 2.2-3009 *et seq*.

2. The Hearing Officer erred in concluding that the Grievant was not terminated in retaliation for engaging in protected activity under the WBPA.

3. The Hearing Officer failed to properly analyze and assess mitigation as to the Grievant because the disciplinary action "exceeds the limits of reasonableness."

(ECF No. 19-9.)

On November 18, 2021, EDR affirmed the Hearing Officer's decision. (ECF No. 19-10.) Pursuant to Va. Code § 2.2-3006(B), on December 20, 2021, Moschetti filed a "Petition for Judicial Review/Notice of Appeal" asking the Circuit Court for Richmond City to overturn the grievance decision "as contradictory to law" because "the Hearing Officer improperly concluded that Moschetti was not a 'whistleblower' under Va. Code [§]§ 2.2-3009, *et seq*…" (ECF No. 19-11.)

On January 14, 2022, Moschetti filed this action. (ECF No. 1.) In response to Defendants' initial Motion to Dismiss (ECF Nos. 11 and 12), on May 6, 2022, Moschetti filed an Amended Complaint pursuant to Fed. R. Civ. P. 15. (ECF No. 16.) Like its progenitor, Moschetti's Amended Complaint alleged a hodgepodge of federal and state law claims against the Commonwealth, OSIG, Westfall, OSIG's Communications Director Kate Hourin, Mercer, and Moran. (ECF No. 16.) On May 20, 2022, Defendants filed a Motion to Dismiss the Amended Complaint, resulting in the dismissal of a majority of Moschetti's claims. (*See* ECF Nos. 18 and 19; ECF Nos. 32 and 33.) As noted above, the remaining claims before this Court include a First Amendment Retaliation Claim (Count III), a wrongful termination/retaliation under the WBPA (Count III), and defamation claims against Defendants Mercer and Moran (Count IV).

As to Count III, while the Court ruled that it was "not barred by principles of *res judicata* at this time[,]" Defendants concur with the Court's corresponding observation. (*See* ECF No. 32 at 19-20, n. 12) ("This is not to say that this case and the case before the Circuit Court of the City of Richmond should necessarily continue in tandem. Other reasons besides *res judicata* may counsel this Court to stay this case or dismiss Count III…") (*See* ECF No. 32 at 20, n. 12.) Accordingly, those reasons are listed below, and they are ripe for review and disposition.

## II. LEGAL STANDARD

District Courts have "broad discretion to stay proceedings." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (explaining that "the power to stay proceedings is incidental in every court to control the disposition of the cause on its docket with economy of time and effort for itself, for counsel, and for litigants"). Proper use of this power "calls for the exercise of judgment which much must weigh competing interests and maintain an even balance." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

## III. ARGUMENT

**A. Staying This Case Pending The Outcome of Moschetti's State-Court Action Best Serves Judicial Economy For The Court And The Litigants.**

Like this federal action, Moschetti's grievance action seeks recourse based on her claim that OSIG terminated her employment because she engaged in protected speech as a whistleblower. However, after having an opportunity to prove her whistleblower claim during the initial phase of the VSGP, the Hearing Officer presiding over Moschetti's grievance emphatically rejected her claim of whistleblower status on a number of grounds. That decision, which thoroughly vindicates the actions of OSIG (and substantiates the criticisms of Moschetti's related conduct), has been appealed by Moschetti and upheld at the administrative level, and is now pending before the Circuit Court for the City of Richmond. Once confirmed in a final state-court

5

judgment, the factual findings and legal determinations made in conjunction with Moschetti's grievance case will have a preclusive effect on the remaining claims before this Court. In addition to precluding Count III entirely, issue preclusion will have a profound effect on the adjudication of Moschetti's First Amendment claim and her defamation claims. Accordingly, the Court should stay this case because doing so now best serves judicial economy—for the Court and the litigants.

Additionally, for the reasons below, the abstention principles announced by the Supreme Court's decision in *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800 (1976) justify a stay of this case pending the outcome of Moschetti's state-court action.

**B. Abstention Under The *Colorado River* Doctrine Is Appropriate And Provides Additional Grounds To Stay This Case Pending The Outcome of Moschetti's State-Court Action.**

"While federal courts have a 'virtually unflagging obligation' to hear all cases over which they have jurisdiction, in rare and exceptional circumstances they may abstain 'for reasons of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Yung v. Zeigler*, Case No. 3:15-cv-270, 2015 U.S. Dist. LEXIS 108188, *5 (E.D. Va. Aug. 17, 2015) (J., Hudson) (quoting *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817-18 (1976) ("*Colorado River*")). For the reasons that follow, the rare factual circumstances of this case warrant abstention under the *Colorado River* doctrine.

**1. The parallel proceedings required to resolve Moschetti's state-court action trigger application of the *Colorado River* doctrine in this case.**

Under the *Colorado River* doctrine, a federal court may abstain from exercising jurisdiction over a federal action that is parallel or to a state-court action. *See Chase Brexton Health Serv., Inc. v. Md.*, 411 F.3d 457, 463 (4th Cir. 2005) (explaining that one important function of the *Colorado River* doctrine is "accommodating federal-state relations" associated with parallel proceedings of the same issues in multiple forums). In deciding

6

whether abstention under *Colorado River* is appropriate, a court "must first determine whether the federal and state actions are parallel." *vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017). In this context, a "parallel" suit exists when the same parties—or "almost identical" parties, *Chase Brexton Health Serv., Inc.*, 411 F.3d at 464—are litigating "substantially the same issues different forums." *New Beckley Mining Corp. v. Int'l Union*, 946 F.2d 1072, 1073 (4th Cir. 1991). Ultimately, while abstention is typically the exception, not the rule, it is appropriate where "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28.

Moschetti insists that "*[t]his* case is about protecting whistleblowers." (Am. Compl. ¶ 1 (emphasis added.)) For a multitude of reasons, Moschetti is not a whistleblower and, therefore, this case is not about protecting whistleblowers. Nevertheless, Moschetti's claim of whistleblower status directly aligns the facts and allegations in this case with those in her parallel state-court action. Indeed, Moschetti's state-court action under the VSGP asks the Circuit Court of the City of Richmond to overturn the grievance decision sustaining her termination, "as contradictory to law" because the "the Hearing Officer improperly concluded that [she] was not a 'whistleblower' under Va. Code [§]§ 2.2-3009, *et seq*…" (ECF No. 19-11 at 1.)

As noted above, § 2.2-3012(A) of the WBPA expressly authorizes qualifying state employees—like Moschetti—to pursue alleged retaliation claims through the VSGP. While the statutory language of the WBPA requires naming Westfall in Count III of the Amended Complaint because he is defined as Moschetti's statutory employer—as compared to the VSGP which requires OSIG as the Respondent in Moschetti's state-court action—this Court should consider OSIG and Westfall as the same party for purposes of conducting its *Colorado River* analysis because the substantive remedies available under either avenue are nearly identical. *Compare* Va.

7

Code §§ 2.2-3005.1(A) and 2.2-3006(B) *with* Va. Code §§ 2.2-3011(D) and 2.2-3012(A). In addition to the nearly identical remedies available under the WBPA and VSGP, it is clear that Moschetti's proceedings in state court parallel this action because deciding whether Moschetti qualifies as a whistleblower involves a single determinative issue. Put simply, the same parties are litigating substantially the same issues in both forums.

Furthermore, the parallel nature of Moschetti's claims extends beyond her state law whistleblower claim under the WBPA and justifies abstention of this case in its entirety. For example, Moschetti's First Amendment retaliation claim in Count II of the Amended Complaint also depends on her purported whistleblower status—i.e., protected activity. (*See* ECF No. 16 at ¶ 70-71.) In fact, this Court acknowledged the impact of Moschetti's whistleblower status under the WBPA when it denied Defendants' Motion to Dismiss Count II, stating that the WBPA "affirmatively allows state employees, including OSIG investigators like Moschetti, to release confidential information detailing wrongdoing or abuse to law enforcement agencies and the General Assembly <u>so long as they do so in good faith</u>." (ECF No. 32, at p. 16.) In so ruling, this Court emphasized the impact that Moschetti's parallel state proceeding may have if the VSGP Hearing Officer's determination that Moschetti <u>did not act in good faith</u> is solidified in a final judgment for *res judicata* purposes. *See supra* at p. 3 (citing ECF No. 19-8 at 6-7, 10-11).

Finally, Moschetti's status as a whistleblower, and the veracity of her reports of alleged wrongdoing, are integral to her defamation claims in Count VI of the Amended Complaint. (*See* ECF No. 16 at ¶ 51, 53, 96.) As this Court noted in its ruling on Defendants' Motion to Dismiss, Moran's and Mercer's alleged statements assert that Moschetti's investigative reports, which form the basis for her whistleblower claim, were "biased or lack[ed] objectivity" and were "untrue or incomplete." (*See* ECF No. 32, pp. 30-32.) Accordingly, the outcome of the parallel state

8

proceeding, which will address whether Moschetti's actions were in "good faith" and identified any alleged "wrongdoing" or "abuse" under the WBPA, will necessarily have an impact on the determination of Moschetti's defamation claims in this case. *See supra* at p. 3 (citing ECF No. 19-8 at 6-7, 10-11).

> **2. The other relevant factors courts consider in determining whether abstention under the *Colorado River* doctrine is appropriate further support a stay of this action pending the outcome of Moschetti's state-court action.**

In addition to the above criteria, the following factors also generally guide district courts in determining whether abstention (or dismissal) is appropriate under the *Colorado River* doctrine:

(1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others;
(2) whether the federal forum is an inconvenient one;
(3) the desirability of avoiding piecemeal litigation;
(4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action;
(5) whether state law or federal law provides the rule of decision on the merits; and
(6) the adequacy of the state proceeding to protect the parties' rights.

*Chase Brexton Health Serv., Inc. v. Md.*, 411 F.3d at 464. Naturally, not all of the above factors will be applicable in every case—and weight assigned to any one factor "may vary greatly from case to case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). Accordingly, no single factor is determinative and courts are instructed to apply the above factors "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 21.

As an initial matter, the Court can disregard the first two factors listed above because this case does not involve property and both forums are located in Richmond, Virginia. Turning to the remaining factors, each supports abstention under the *Colorado River* doctrine. The third factor – the desirability of avoiding piecemeal litigation – favors abstention because the outcome of Moschetti's pending state-court action will conclusively resolve whether Moschetti's actions

9

constitute protected whistleblower activity. By contrast, simultaneously litigating the same issue in this forum would be duplicative, unnecessary, and increases the risk of inconsistent results to the detriment of both parties—all of the considerations that courts should seek to avoid. *See Gannett Co., Inc. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 744 (4th Cir. 2002) (citations omitted) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.")

The fourth factor – the order in which jurisdiction was obtained by the courts – also weighs strongly in favor of abstention. Indeed, in addition to observing which lawsuit was filed first, this factor also requires consideration of how much progress has been made in each of the cases, favoring abstention if one of the cases has already progressed much further than the other. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21. Facially, there is no debate that Moschetti filed her action in state court before filing in this Court. But looking beyond the court filing dates, it is evident that Mochetti's grievance case is also significantly further along than the instant case. Moschetti initiated her grievance on March 31, 2021. In the months leading up to Moschetti's grievance hearing, the parties exchanged several hundred documents, prepared and presented multiple fact witnesses, and introduced dozens of evidentiary exhibits as part of the two-day evidentiary hearing that was eventually held in September 2021. After the hearing, the parties also submitted briefs in support of their respective positions at the hearing officer's request.

After the hearing officer rendered his decision, Moschetti filed a request for administrative review of the decision by EDR, which required additional submissions by each side in support of their respective positions on the ultimate issue—i.e., whether Moschetti actions constituted protected whistleblower activity. Indeed, the factual grievance record is complete and all that remains for the state court to do is decide a singular issue of law: whether the Hearing Officer

10

appropriately determined that Moschetti <u>did *not* act in good faith in disclosing confidential OSIG investigative materials and, thus, she was not a "whistleblower" under the WBPA</u>. Therefore, this factor and judicial economy dictate that the case which has progressed the furthest—Moschetti's state-court action—be decided first.

Next, the fifth factor—whether state law or federal law provides the rule of decision on the merits—also weighs in favor of abstention and exists, in part, to address a situation "where retention of jurisdiction would create needless friction with important state policies." *Gannett*, 286 F.3d at 746 (citation and internal quotation marks omitted). Ultimately, whether Moschetti was terminated in violation of the WBPA turns exclusively on state law, which will likely implicate the principle of *res judicata*, which also turns on the application of state law. Indeed, in our dual system of government—through full faith and credit, the *Rooker–Feldman* doctrine,[3] the *Colorado River* abstention doctrine, and other similar doctrines—respect is given by both state and federal governments to the courts of the other. At bottom, the federal-state system of courts seeks, in a cooperative effort, to give one fair trial on a given dispute, to respect each other, and thus to administer justice efficiently. *See Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 343 (4th Cir. 2002).

Finally, with respect to the sixth factor – whether the state court proceeding will adequately protect the parties' rights—as discussed above, Moschetti's state-court action is an adequate vehicle for the complete and prompt resolution of the ultimate issue in this case: whether Moschetti was terminated for protected whistleblower activity. If she was, Moschetti can recover the same

---

[3] The *Rooker-Feldman* doctrine is a legal precept invoked by defendants to strip federal district and bankruptcy courts of their subject matter jurisdiction over suits that can be characterized as appeals or reconsideration of state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

11

relief under the VSGP as she could if she had elected to pursue her WBPA claim outside of the VSGP. Conversely, if Moschetti does not prevail in state-court, Defendants should not be deprived of the preclusive effects that outcome would have on this action. At minimum, this Court should stay this action pending the outcome of Moschetti's state-court action. However, if this Court believes that abstention is only appropriate for Moschetti's WBPA claim, then dismissal of Count III is an appropriate alternative course of action. *Yung*, 2015 U.S. Dist. LEXIS 108188, at * 10 (citing *Cox v. Planning Dist. I Cmty. Mental Health & Mental Retardation Servs. Bd.*, 669 F.2d 940, 943 (4th Cir. 1982) (explaining that a federal court abstaining on *Colorado River* grounds should dismiss a claim when "the determinative issues will unfailingly be resolved within the parameters of the state-court litigation . . . as no further action by the district court is anticipated").

## IV.   CONCLUSION

The above criteria and the precepts of wise judicial administration furthered by *Colorado River*, both counsel and favor federal abstention in this case. Wherefore, and for the foregoing reasons, this Court should grant Defendants' Motion to stay the instant case pending the outcome of Moschetti's state-court action—and/or, in the alternative, dismiss Count III outright because the determinative issues of that claim can and will be conclusively resolved in state court. Defendants respectfully requests an expedited resolution of the matters raised in this Motion in light of the upcoming deadlines in this case, including the deadline for Defendants' to file their respective Answers on August 25, 2022.

Dated: August 19, 2022　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**MICHAEL C. WESTFALL, BRIAN MORAN, AND CLARK MERCER**

　　　　　　　　　　　　　　　　　　　　　　/s/ *Scott A. Siegner*
　　　　　　　　　　　　　　　　　　　　Jimmy F. Robinson, Jr. (VSB No. 43622)
　　　　　　　　　　　　　　　　　　　　jimmy.robinson@ogletreedeakins.com
　　　　　　　　　　　　　　　　　　　　Scott A. Siegner (VSB No. 89570)
　　　　　　　　　　　　　　　　　　　　scott.siegner@ogletreedeakins.com
　　　　　　　　　　　　　　　　　　　　W. Ryan Waddell (VSB No. 91148)
　　　　　　　　　　　　　　　　　　　　ryan.waddell@ogletreedeakins.com
　　　　　　　　　　　　　　　　　　　　OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
　　　　　　　　　　　　　　　　　　　　901 East Byrd Street, Suite 1300
　　　　　　　　　　　　　　　　　　　　Richmond, VA 23219
　　　　　　　　　　　　　　　　　　　　Tel.: (804) 663-2342
　　　　　　　　　　　　　　　　　　　　Fax: (804) 225-8641

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of August, 2022, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiff:

Richard F. Hawkins, III
The Hawkins Law Firm, P.C.
2222 Monument Avenue
Richmond, Virginia 23220
Tel.: (804) 308-3040
Fax: (804) 308-3132
rhawkins@thehawkinslawfirm.net

*Counsel for Plaintiff*

        /s/ *Scott A. Siegner*
Jimmy F. Robinson, Jr. (VSB No. 43622)
jimmy.robinson@ogletreedeakins.com
Scott A. Siegner (VSB No. 89570)
scott.siegner@ogletreedeakins.com
W. Ryan Waddell (VSB No. 91148)
ryan.waddell@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
901 East Byrd Street, Suite 1300
Richmond, VA 23219

*Counsel for Defendants*