# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JENNIFER MOSCHETTI,      )
                        )
        Plaintiff,      )
                        )
v.                       )     Civil Action No. 3:22-cv-24–HEH
                        )
OFFICE OF THE INSPECTOR     )
GENERAL, *et al.*,           )
                        )
        Defendants.    )

## MEMORANDUM OPINION
### (Denying Motion to Dismiss and Motion to Strike)

THIS MATTER is before the Court on Defendants Clark Mercer's ("Mercer"), Brian Moran's ("Moran"), and Michael C. Westfall's ("Westfall") (collectively, "Defendants") Motion to Strike and Motion to Dismiss the Remaining Claims in Plaintiff's Amended Complaint (the "Motion," ECF No. 69), filed on July 21, 2023. Pursuant to Federal Rule of Civil Procedure 12(f), Defendants move to strike portions of the Amended Complaint that relate to Counts I, IV, and V which this Court previously dismissed and portions of the Amended Complaint involving Kate Hourin ("Hourin") and the Office of the Inspector General ("OIG") who are no longer defendants in this case. Defendants seek to dismiss Counts II, III, and VI pursuant to Rules 12(b)(1) and 12(b)(6).

The parties have submitted memoranda in support of their respective arguments. On October 3, 2023, the Court heard oral argument on the issues, and the Motion is now ripe for review. For the reasons that follow, the Court will deny the Motion.

## I.    BACKGROUND

Plaintiff Jennifer Moschetti ("Plaintiff" or "Moschetti") worked as an investigator at the Office of the State Inspector General ("OSIG") from January 2020 until March 22, 2021. (Am. Compl. ¶ 10, ECF No. 16.)  At all relevant times, Westfall, the State Inspector General, supervised Moschetti.  (*Id.* ¶¶ 6, 14.)  On May 4, 2020, Westfall assigned Moschetti to investigate fraud and abuse allegations involving the Virginia Parole Board (the "Parole Board").  (*Id.* ¶ 12.)  Moschetti asserts she faithfully investigated the Parole Board by conducting interviews, reviewing documents, and evaluating applicable law.  (*Id.* ¶ 13.)

Based on her investigation, Moschetti prepared reports detailing the Parole Board's decision to grant parole to eight (8) different inmates, including one inmate referred to as "VLM."  (*Id.* ¶¶ 13, 15–16.)  In those reports, Moschetti concluded that the Parole Board had violated its own policies and certain laws.  (*Id.* ¶¶ 15–16.)  Moschetti submitted these filings to Westfall who certified her findings as "substantiated."  (*Id.*)  The OSIG trimmed Moschetti's VLM report down to ten (10) pages and submitted it to the Office of the Attorney General ("OAG").  (*Id.* ¶ 16.)  The OAG further summarized and redacted the VLM report to six (6) pages.  (*Id.*)

On or about July 28, 2020, the OSIG released the six-page VLM report to "various persons" including Mercer, the Chief of Staff for Governor Ralph Northam.  (*Id.* ¶¶ 9, 17.)  Shortly thereafter, the six-page VLM report was leaked to the public.  (*Id.*)  On August 14, 2020, Moschetti and Westfall met with various members of the Northam

Administration, including Mercer and Moran, Secretary of Public Safety and Homeland Security. (*Id.* ¶ 18.) Moschetti alleges that, at the meeting, Mercer and Moran "hostilely cross-examined" both her and Westfall, questioned the VLM report's style and conclusions, and suggested that the report was biased. (*Id.* ¶¶ 18–26.) Moran voiced his doubts that the OSIG had the legal authority to investigate the Parole Board and questioned the neutrality of the investigators, including Moschetti. (*Id.* ¶¶ 19, 22, 24–25.) Moschetti further asserts that, at the meeting, Westfall told Mercer and Moran that any further complaints about the Parole Board would not be investigated and, instead, would be forwarded to the Governor's Office. (*Id.* ¶ 27.)

Moschetti contends that this meeting was intended to intimidate, and did intimidate, her, Westfall, and OSIG investigators. (*Id.*) Because her VLM report had been shortened and redacted, and because of Mercer's and Moran's conduct at the August 14 meeting, Moschetti worried that the OSIG, the OAG, or the Governor's Office may try to "cover up" the Parole Board's wrongdoing. (*Id.* ¶¶ 30–33.) Moschetti also feared she may lose her job because of her investigation into the Parole Board. (*Id.* ¶¶ 28–29.)

Because of these concerns, at some time during the summer or fall of 2020, Moschetti decided to "speak out." (*Id.* ¶ 34.) First, she spoke to a *former* law enforcement officer and a current police officer with the City of Richmond about the investigation and shared her reports with them, including her original draft of the VLM report. (*Id.* ¶¶ 34–35 (emphasis added).) Later, she shared some of the information from

her Parole Board investigation with the Federal Bureau of Investigation ("FBI"). (*Id.* ¶ 37.) In February 2021, Moschetti's draft VLM report was leaked to the media without the OSIG's permission. (*Id.* ¶ 38.) Moschetti denied leaking any information about the Parole Board investigation directly to the media. (*Id.* ¶ 41.)

After the leak, Westfall announced that the Virginia State Police was investigating how the media obtained the draft VLM report. (*Id.* ¶ 42.) Because of the public leak and the fact that she had spoken with federal and state law enforcement, Moschetti grew more concerned that she may be "used as a scapegoat" or "would be retaliated against." (*Id.* ¶ 44.) On March 3, 2021, Moschetti released more files and reports from her Parole Board investigation to the Virginia General Assembly. (*Id.* ¶ 45.)

On March 5, 2021, the OSIG placed Moschetti on pre-disciplinary leave with pay, pending an investigation. (*Id.* ¶ 46.) That same day, Moschetti notified the OSIG that she sent some documents to the Virginia General Assembly and claimed that she was a whistleblower. (*Id.* ¶ 47.) On March 8, 2021, she filed a Petition for Declaratory Judgment and Mandamus (the "Petition") asking the Circuit Court for the City of Richmond ("Richmond Circuit Court") to declare her a whistleblower. (*Id.* ¶ 48.) The OSIG fired Moschetti on March 22, 2021. (*Id.* ¶ 49.)

Around March 2021, the media extensively covered the Parole Board investigation and the leaked VLM report. During a March 9, 2021 news conference, Mercer allegedly defamed Moschetti by stating, "We went into the meeting ***thinking*** that there was bias and there was [a] lack of objectivity" and "[w]e left that meeting ***knowing*** that there was

***bias and a lack of objectivity in that report***."[1]  (*Id.* ¶ 51 (emphasis in original).)  In a

radio interview around the same time, Moran said that Moschetti's report was "biased"

and that "she would not hold up under 'cross examination.'"  (*Id.* ¶ 53.)  Moschetti

alleges that all of these statements about her and her report are false and defamatory.  (*Id.*

¶¶ 56–58.)

After her termination, on March, 31, 2021, Moschetti filed a Grievance Form A

(the "Grievance," ECF No. 70-5) challenging her termination under the Virginia State

Grievance Procedure ("VSGP"), Va. Code §§ 2.2-3000, *et seq.*  (Mem. in Supp. at 7,

ECF No. 70.)  In her Grievance, Moschetti alleged, among other things, that she was a

protected whistleblower, and therefore, her termination violated Va. Code § 2.2-3011.

(*Id.*)

On September 15–16, 2021, an administrative hearing officer (the "Hearing

Officer") conducted a hearing to decide the merits of Moschetti's Grievance.  (*Id.* at 8.)

During the hearing, while under oath, Moschetti conceded that she sent confidential

information to her personal email on multiple occasions and admitted that her actions

violated OSIG's confidentiality policies.  (*Id.*)  She also conceded that she was ultimately

responsible for the information leaked to the media.  (*Id.*)  However, Moschetti alleges

that the hearing was futile because it was limited in scope, and she was not allowed to

call certain witnesses to testify.  (Am. Compl. ¶ 59.)

On October 4, 2021, the Hearing Officer issued a written decision (Ex. F, ECF

---

[1] The "meeting" refers to the August 14, 2020, meeting with Mercer and Moran.  (Am. Compl.
¶ 51.)

No. 70-6) which upheld Moschetti's termination and found that Moschetti "does not

qualify as a whistleblower" under Va. Code § 2.2-3011 for the following four (4) reasons:

1. OSIG's security concerns and investigation into the leak of confidential information preceded Moschetti's purported whistleblower report.
2. Moschetti admitted that her disclosure of confidential information violated state and OSIG policy and that she bore responsibility for the subsequent disclosure to the media.
3. Moschetti's "purported whistleblower report was not made in 'good faith' because it was intended to protect her from discipline for her earlier policy violations."
4. Moschetti's purported whistleblower report did not "identify any alleged 'wrongdoing' or 'abuse' within the scope of [Va. Code § 2.2-3011]."

(Mem. in Supp. at 8 (citing Ex. F at 6–7, 10–11).) On October 19, 2021, Moschetti

sought an administrative review of the hearing decision by the Department of Human

Resource Management's Office of Employment Dispute Resolution (the "EDR"). (*Id.*)

Moschetti alleged the Hearing Officer erred by (1) concluding that she was not a

whistleblower; (2) concluding she was not terminated in retaliation for engaging in

protected activity under the Whistle Blower Protection Act ("WBPA"); and (3) failing to

properly analyze and assess the mitigation of Moschetti's disciplinary action. (*Id.* at 9

(citing Ex. G, ECF No. 70-7).) The EDR affirmed the Hearing Officer's decision on

November 18, 2021. (*Id.* (citing Ex. H, ECF No. 70-8).)

On December 20, 2021, Moschetti filed a "Petition for Judicial Review/Notice of

Appeal" (Ex. I, ECF No. 70-9) requesting that the Richmond Circuit Court overturn the

Hearing Officer's decision as "contradictory to law." (*Id.*) After oral argument and

review of the administrative record, Judge McClenney issued an opinion affirming the

Hearing Officer's decision. (*Id.*) Moschetti appealed the decision to the Court of

6

Appeals of Virginia, but later, on March 1, 2023, the Court of Appeals granted her Motion for Leave to Withdraw the appeal. (*Id.* (citing Ex. K, ECF No. 70-11).)

Based on these facts, Moschetti brought six (6) claims in her Amended Complaint against Defendants. On August 11, 2022, this Court dismissed Counts I, IV, and V. (Order at 1, ECF No. 33.) As to Count VI, the Court dismissed the allegations against Defendants Westfall and Hourin and dismissed the allegations relating to Defendant Mercer's "political ploy" comment. (*Id.*) The Court also terminated Defendants Hourin, the OIG, and the Commonwealth of Virginia from the case. (*Id.*) On July 7, 2023, the Court granted the parties' Consent Motion (ECF No. 65) permitting Defendants to file the present Motion. (Order at 1–2, ECF No. 68.) Defendants now move to dismiss the remaining Counts: Count II – First Amendment Retaliation against Defendant Westfall; Count III – Wrongful Termination under Virginia Code § 2.2-3011 against Defendant Westfall; and Count VI – Defamation against Defendants Moran and Mercer. (Mot. at 1; Am. Compl. at 15–16, 19.)

## II.   MOTION TO DISMISS

### A. Legal Standard

Defendants' Motion is premised on Rules 12(b)(1) and 12(b)(6). (Mot. at 1–2.) A motion made pursuant to Rule 12(b)(1) challenges the Court's jurisdiction over the subject matter of a complaint. Such a challenge can be facial, asserting that the facts as pled fail to establish jurisdiction, or factual, disputing the pleadings themselves and arguing that other facts demonstrate that no jurisdiction exists. *Beck v. McDonald*, 848

F.3d 262, 270 (4th Cir. 2017) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). For a facial challenge, "the plaintiff is 'afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration.'" *Id.* (quoting *Kerns*, 585 F.3d at 192.) As for a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply." *Id.* (citing *Kerns*, 585 F.3d at 192). In the Motion, Defendants bring factual challenges to Counts II and III under Rule 12(b)(1).[2] (*See* Mot. at 1–2.) Thus, to the extent Defendants make factual challenges, the Court will consider outside facts presented by both parties and the lesser procedural protection applies. *See Beck*, 848 F.3d at 270; *Kerns*, 585 F.3d at 192.

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)) (internal quotations omitted). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Allegations have facial plausibility 'when the plaintiff pleads factual content that

---

[2] Defendants argue that Counts II and III are barred by *res judicata* and the doctrine of collateral. (Mot. at 1–2.) These arguments require the Court to consider outside information and are thus factual. *See Beck*, 848 F.3d at 270.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 678). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

While a motion to dismiss tests the sufficiency of a complaint, courts may consider documents that are either "explicitly incorporated into the complaint by reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). A court may consider a document not attached to the complaint, when "the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails." *Id.* (alteration in original) (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

## B. Counts II and III

Defendants move to dismiss Count II pursuant to Rule 12(b)(1). Defendants contend that Count II is barred by *res judicata*, or claim preclusion, and the doctrine of

collateral estoppel, or issue preclusion. (Mem. in Supp. at 14–15.)  Although Moschetti

did not bring a First Amendment Retaliation claim under the VSGP, Defendants contend

that this claim is nonetheless barred by the state court's decision. (*Id.* at 15.)  The

Richmond Circuit Court affirmed the Hearing Officer's finding that Moschetti was

terminated for violating OSIG policy, and not for engaging in a protected activity, which

is a necessary element for a viable First Amendment retaliation claim. (*Id.* at 15); *Brooks*

*v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) (the three-part test for a First Amendment

retaliation claim requires a showing that "the employee's speech was a substantial factor

in the employee's termination decision.")  Alternatively, Defendants assert that the Court

can consider the Hearing Officer's determination under Rule 12(b)(6). (*Id.*)

    Defendants similarly assert that Count III is barred by *res judicata* and collateral

estoppel. (*Id.* at 12–14.)  They first contend that Count III is barred by claim preclusion

because Moschetti brings a wrongful termination claim pursuant to Va. Code § 2.2-3011

using the same theory she pursued under the VSGP. (*Id.* at 13.)  Additionally, the same

remedies are available here as were available under the VSGP. (*Id.*)  Defendants also

argue that Count III is barred by the doctrine of collateral estoppel because Moschetti is

attempting to relitigate her whistleblower claim after the VSGP concluded, and the

Richmond Circuit Court affirmed, that Moschetti did not qualify as a whistleblower

under Virginia law. (*Id.*)

    Moschetti makes the same argument for both Counts II and III—Defendants have

failed to prove the elements of *res judicata* and collateral estoppel. (Mem. in Opp'n at 6–

22.)  She argues that Westfall was not a party or a party in privity to the state proceeding, and thus, neither *res judicata* nor collateral estoppel apply.  (*Id.* at 8–12, 16–18.) Moschetti also asserts that Westfall cannot invoke collateral estoppel because there is no mutuality between the parties.  (*Id.* at 12–15, 18.)  Lastly, Moschetti contends that she did not have a full and fair opportunity to litigate in the state proceeding.  (*Id.* at 15–16, 18.)

### 1. Counts II and III are not barred by *res judicata*.

The Court turns first to the application of *res judicata*, or claim preclusion. Pursuant to the Full Faith and Credit statute, 28 U.S.C. § 1738, if a party asserts *res judicata* in a § 1983 action based on a state court judgment, federal courts "are bound . . . to apply the law of the rendering state to determine whether and to what extent the state court judgment should have preclusive effect in the federal action."  *Davenport v. N.C. Dept. of Transp.*, 3. F.3d 89, 92 (4th Cir. 1993) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).  Thus, because Count II is brought under § 1983 and Count III is brought under Va. Code § 2.2-3011, the Court will apply Virginia law.

In Virginia, *res judicata* is prescribed by Supreme Court of Virginia Rule 1:6(a). Rule 1:6(a) states, in full:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought. A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim or third-party pleading.

VA. R. SUP. CT. 1:6(a). For the purposes of Rule 1:6, "party or parties include all named parties and those in privity." *Id.* at 1:6(d). To establish *res judicata*, three elements must be satisfied: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004); *see also Columbia Gas Transmission, LLC v. David N. Martin Revocable Trust*, 833 F. Supp. 2d 552, 557–59 (E.D. Va. 2011). Under Virginia law, the party asserting *res judicata* bears "'the burden of proving by a preponderance of the evidence that the claim or issue is precluded by a prior judgment.'" *Passaro v. Virginia*, 935 F.3d 243, 249 (4th Cir. 2019) (quoting *Scales v. Lewis*, 541 S.E.2d 899, 901 (Va. 2001)).

Notably, Defendants raised the same *res judicata* argument in their first Motion to Dismiss (ECF No. 18), but, at that time, no final judgment had been entered by the Richmond Circuit Court. (*See* Mem. Op. at 19, ECF No. 32.) Both parties now agree that final judgment has been entered in Moschetti's state court case. (Status Report at 3–5, ECF No. 67; *see* Mem. in Supp. at 9–10, 13–14, 19; Mem. in Opp'n at 7–11.) The second element is also uncontested because the parties concede that the underlying cause of action arises from the same conduct in both the state proceeding and the immediate case. (*See* Status Report at 3–5; Mem. in Supp. at 12–14; Mem. in Opp'n at 7–11.) Thus, the first and second elements are satisfied.

The parties disagree as to the third element—whether the state case and the case at hand involve the same parties, or parties in privity. In the VSGP, the parties included

Moschetti and the OSIG. (*See* Ex. E, ECF No. 70-5; Ex. F; Ex. H; Ex. I; Ex. J, ECF No. 70-10.) Here, the parties to Counts II and III include Plaintiff Moschetti and Defendant Westfall, in his individual capacity. (*See* Am. Compl. ¶ 6.) Because the parties are not the same, the Court must determine whether the OSIG and Westfall are in privity, and the Court concludes that they are not.

The Fourth Circuit applies the rule of differing capacities to determine privity between defendants in their official and individual capacity. *See Andrews v. Daw*, 201 F.3d 521, 524–26 (4th Cir. 2000); *Brooks*, 626 F.3d at 201. "The rule of differing capacities is generally understood to mean that defendants in their official and individual capacities are not in privity with one another for the purposes of *res judicata*." *Brooks*, 626 F.3d at 201 (internal citation omitted) (italics added). The *Daw* decision outlined three key distinctions between individual capacity suits and official capacity suits: "(1) damages are recovered from the entity in an official-capacity suit, while they are recovered from an official's personal assets in an individual-capacity suit; (2) different theories of liability are implicated in official- versus individual-capacity suits; and (3) different defenses are available in official- versus individual-capacity suits." *Id.* at 203 (citing *Daw*, 201 F.3d at 525 (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985))).

In *Brooks*, the plaintiffs sued two of their supervisors at the Virginia Department of Corrections ("VDOC") in their individual capacities under 42 U.S.C. § 1983. *Id.* at 195–96. The defendants moved to dismiss the complaints asserting that plaintiff's § 1983 claims were barred by the doctrine of *res judicata* because the allegations in the

complaints had been resolved in prior grievance proceedings against the VDOC. *Id.*

at 196. The Fourth Circuit applied the rule of differing capacities and held that, based on

the three key distinctions set forth in *Daw*, there was no privity between the VDOC, in

the grievance proceeding, and the defendants in the federal case. *Id.* at 203. The parties

lacked privity because the defendants were sued in their individual capacity, not their

official capacity. *Id.*

This case is analogous to *Brooks*. Moschetti brought the VSGP against the OSIG,

but, in this case, Moschetti sued Westfall solely in his individual capacity. (*See* Am.

Compl. ¶ 6.) Thus, under the rule of differing capacities, Westfall, in his individual

capacity, is not in privity with the OSIG. Because there is no privity between the parties,

Counts II and III are not barred by *res judicata*.

### 2. Counts II and III are not barred by the doctrine of collateral estoppel.

The Court next considers whether Counts II and III are barred by collateral

estoppel. Collateral estoppel "provides that once a court of competent jurisdiction

actually and necessarily determines an issue, that determination remains conclusive in

subsequent suits, based on a different cause of action but involving the same parties, or

privies, to the previous litigation." *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir.

2007); *see also Montana v. United States*, 440 U.S. 147, 153 (1979). "Thus, '[t]he

doctrine of collateral estoppel precludes relitigation of issues of fact or law that are

identical to issues which have been actually determined and necessarily decided in prior

litigation in which the party against whom collateral estoppel is asserted had a full and

fair opportunity to litigate.'" *Id.* (quoting *Va. Hosp. Ass'n. v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987)).

"The doctrine of collateral estoppel precludes parties to a prior action from litigating in a subsequent action any factual issue that was actually litigated and essential to a valid, final judgment in the prior action." *Scales v. Lewis*, 541 S.E.2d 899, 901 (Va. 2001). In Virginia, five (5) elements must be met for collateral estoppel to apply: "(1) the parties to the prior and subsequent proceedings, or their privies, must be the same, (2) the factual issue sought to be litigated actually must have been litigated in the prior action, (3) the factual issue must have been essential to the judgment in the prior proceeding," "(4) the prior action must have resulted in a judgment that is valid, final, and against the party against whom the doctrine is sought to be applied," and (5) there must be mutuality between the parties, meaning "a litigant cannot invoke collateral estoppel unless he would have been bound had the litigation of the issue in the prior action reached the opposite result." *Id.* (quoting *Angstadt v. Atl. Mut. Ins. Co.*, 457 S.E.2d 86, 87 (1995)).

The analysis of the privity requirement is the same for *res judicata* and collateral estoppel. *See Columbia Gas Transmission, LLC*, 833 F. Supp. 2d at 560. Thus, as with *res judicata*, Defendants have not satisfied the privity requirement for collateral estoppel because the parties, or their privies, are not the same under the rule of differing capacities.

Additionally, Defendants cannot establish mutuality. "Under the principle of mutuality, a litigant may not invoke a preclusive judgment if he would not have been

15

bound by the opposite result." *Weinberger v. Tucker*, 510 F.3d 486, 494 (4th Cir. 2007)

(citing *Rawlings v. Lopez*, 591 S.E.2d 691, 692 (2004)). This element "serves to keep the

influence of the initial adjudication within proper bounds by requiring that to be effective

the estoppel of the judgment must be mutual." *Norfolk & W. Ry. Co. v. Bailey Lumber

Co.*, 272 S.E.2d 217, 218 (1980). Here, Westfall would not have been bound if Moschetti

had succeeded on her claims in the VSGP because Westfall was not a party to that action,

nor was he in privity with the OSIG in his individual capacity. The Richmond Circuit

Court affirmed the Hearing Officer's decision that Moschetti does not qualify as a

whistleblower under Va. Code § 2.2-3011 for four (4) key reasons. (*See* Mem. in Supp.

at 8 (citing Ex. F at 6–7, 10–11).) This decision does not affect or bind Westfall in his

individual capacity, nor would it if the court found the opposite result. Therefore,

Defendants have not established the mutuality element for collateral estoppel.

Because Defendants have not established privity and mutuality, Counts II and III

are not barred by the doctrine of collateral estoppel. Accordingly, the Motion will be

denied as to Count III.

### 3. Count II survives Defendants' Motion to Dismiss under Rule 12(b)(6).

Finally, Defendants argue that if Count II is not barred by claim or issue

preclusion, which the Court finds that it is not, then the Court may dismiss under Rule

12(b)(6) based on the state court decision "because [the documents] cannot be challenged

as inauthentic and they are integral to present claims before this Court." (Mem. in Supp.

at 15); *see Goines*, 822 F.3d at 166. Moschetti argues that the state court proceedings are

not binding upon her and, therefore, cannot be used to dispute or contravene her allegations. (Mem. in Opp'n at 22–23.)

A court may consider a document not attached to the complaint, when "the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. A document is integral to the complaint if by its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007).

Defendants attached the Hearing Officer's decision (Ex. F) and the Richmond Circuit Court's Opinion and Order (Ex. J) in support of their Motion. While there is no dispute that these documents are authentic, the Court finds that they are not integral to the Amended Complaint because their very existence does not give rise to the legal rights asserted; neither document provides a basis for Moschetti's First Amendment retaliation claim.[3] *See Walker*, 517 F. Supp. 2d at 806. Therefore, the Court cannot consider these documents as integral and authentic at the Rule 12(b)(6) stage and the Motion will be denied as to Count II.[4]

### C. Count VI

---

[3] For example, "courts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that 'constitute the core of the parties' contractual relationship' in a breach of contract dispute." *Fisher v. Md. Dept. of Pub. Safety and Corr. Servs.*, No. 10-cv-206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010) (quoting *Walker*, 517 F. Supp. 2d at 806).

[4] The parties did not argue that the Court may consider the state court documents as matters of public record. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, [courts] may properly take judicial notice of matters of public record") (internal citations omitted). Thus, the Court did not consider this argument.

Defendants move to dismiss Count VI pursuant to Rule 12(b)(6).  Defendants argue that the Amended Complaint does not allege facts to support that Mercer's news conference statements defamed Moschetti because Mercer only referenced OSIG's and OAG's shortened report, not Moschetti's report. (Mem. in Supp. at 17.) Defendants similarly assert that Moran's radio interview statements only referenced the shortened report. (*Id.* at 17–18.)  Additionally, Defendants contend that Moran's statements, specifically that Moschetti's report was "biased" and that she would not hold up under cross-examination, were true based on Moschetti's admissions at the VSGP proceedings. (*Id.*) With respect to Mercer's and Moran's statements in the August 14 meeting, Defendants allege that the comments were directed at Westfall, not Moschetti.  (*Id.* at 18.)

Moschetti asserts that Defendant's Motion as to Count VI is actually a motion to reconsider this Court's August 11, 2022 Opinion. (Mem. in Opp'n at 23–28.)  Thus, because there are no grounds for reconsideration, the Motion should be denied as to Count VI.  (*Id.*)  Moreover, Moschetti contends that this Court's prior Opinion remains sound.  (*Id.*)  The Court agrees that Defendants merely request reconsideration of their prior arguments as they pertain to Count VI.

A Court may reconsider a prior interlocutory ruling in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993); *see also* FED. R. CIV. P. 59(e).

18

A "'mere disagreement' with the Court's opinion does not rise to the level of clear error and cannot support a Rule 59(e) motion." *Pettis v. Nottoway Cnty. Schl. Bd.*, 2014 WL 12917975, at *1 (E.D. Va. Feb. 7, 2014) (internal citation omitted). "The reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)) (internal quotations omitted). The threshold for relief under this Rule is high. *Id.*; *see also Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (explaining that reconsideration is appropriate only in "very narrow circumstances").

"The purpose of a Rule 59(e) motion is to allow the court to reevaluate the basis for its decision. . . . Motions for reconsideration are not at the disposal of an unsuccessful party to 'rehash' the same arguments and facts previously presented." *Keyes v. Nat'l R.R. Passenger Corp.*, 766 F. Supp. 277, 280 (E.D. Pa. 1991); *see also Truth Techs., Inc. v. Arnold*, 2017 WL 11501502, at *1 (E.D. Va. Nov. 21, 2017). "[W]hatever may be the purpose of Rule 59(e) it [was not] intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977). The Fourth Circuit has explained that a decision is not clearly erroneous "by being just maybe or probably wrong; it must strike [the Court] as wrong with the force of a five-week-old unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 1995 WL 520978, at *5 n.6 (4th Cir. 1995)) (internal quotations and alterations omitted). "It must be 'dead wrong.'" *Id.* (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

Similarly, the "rationale underlying the use of Rule 60(b) is to permit the district court to correct an erroneous judgment and thereby avoid the necessity of an appeal." *Freschi v. Grand Coal Venture*, 103 F.R.D. 606, 608 (S.D.N.Y. 1984). Rule 60(b) provides for extraordinary relief "and is only to be invoked upon a showing of exceptional circumstances." *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990) (internal citation and quotations omitted). "Where the motion is nothing more than a request that the district court change its mind, . . . it is not authorized by Rule 60(b)." *United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982). "Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment. The fact that a judgment is erroneous does not constitute a ground for relief under that Rule." *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 401 (4th Cir. 1995) (internal citation and quotations omitted).

The Court previously denied Defendants' First Motion to Dismiss (ECF No. 18) as to Count VI and found that three of the four statements made by Moran and Mercer were potentially actionable. (Mem. Op. at 29–32.) After Moschetti filed her Amended Complaint, the parties agreed to allow Defendants to file a second Motion to Dismiss due to the conclusion of the state court proceeding. (Order at 3, ECF No. 68.)

Defendants' present Motion simply rehashes arguments this Court has previously considered and rejected. In both Motions to Dismiss, Defendants make essentially the same arguments—Mercer's and Moran's statements referenced the shortened report, not

Moschetti's report, and the statements were directed at Westfall, not at Moschetti.[5] "Reconsideration is not justified where a party merely 'attempts to put a finer point on his old arguments and dicker about matters decided adversely to him.'" *Truth Techs.*, 2017 WL 11501502, at *1 (internal citation omitted). Defendant's contentions are merely an attempt to relitigate this Court's decision and, therefore, will be denied.

To the extent that Defendants raise new arguments based on the state court proceeding, they assert that Moran's comment, namely, that Moschetti "would not hold up under 'cross examination'" (Am. Compl. ¶ 53), was true because "Moschetti's testimony on cross examination confirmed that she was not a whistleblower" in the state action. (Mem. in Supp. at 18 (alterations omitted).) This differs from Defendants' previous contention that these statements were opinion and not actionable.

However, based on the face of the Amended Complaint, and viewing the facts most favorable to Plaintiff, the Court finds that the Amended Complaint states a plausible claim for defamation against Mercer and Moran. As explained previously, the Court cannot consider the state court decisions at the Rule 12(b)(6) stage because they are not integral to Moschetti's claims. Moreover, it is unclear whether Moschetti's concessions during cross examination prove that Moran's and Mercer's statements were truthful. Thus, the Motion as to Count VI will be denied at this stage.

## III.   MOTION TO STRIKE

Rule 12(f) permits a district court to strike "an insufficient defense or any

---

[5] Upon comparison, the Court notes the language in both Motions are nearly identical.

redundant, immaterial, impertinent, or scandalous matter" from a pleading. FED. R. CIV.

P. 12(f). Rule 12(f) motions are generally disfavored "because striking a portion of a

pleading is a drastic remedy and because it is often sought by the movant simply as a

dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir.

2001) (internal citation and quotations omitted). "A motion to strike places a 'sizable

burden on the movant,' . . . and would typically require a showing that denial of the

motion would prejudice the movant." *Miller v. Rutherford County*, No. 1:08-cv-441,

2008 WL 5392057, at *4 (W.D.N.C. Dec. 19, 2008) (quoting *Clark v. Milam*, 152 F.R.D.

66, 70 (S.D. W.Va. 1993)).

Defendants move to strike "Paragraphs 60-68, 85-94, from the Amended

Complaint because they relate to Counts I, IV, and V, which have already been

dismissed" and "Paragraphs 5 and 7 and the first clause of Paragraph 96 because OSIG

and Hourin are no longer defendants in this case." (Mem. in Supp. at 12.) Defendants

also request that the Court strike "Paragraphs 69-75 and/or 76-84 (and any references to

Moschetti being a 'whistleblower')," if the Court dismisses Counts II or III. (*Id.*)

Moschetti opposes striking portions of the Amended Complaint, asserting that the

information sought to be stricken does not fall into the categories identified in Rule 12(f)

and noting that the Fourth Circuit generally disfavors these motions. (Mem. in Opp'n

at 6.)

Although this Court dismissed Counts I, IV, and V and dismissed OIG and

Hourin as defendants, the Court does not find it appropriate to employ the drastic remedy

of striking portions of the Amended Complaint as requested by Defendants. Defendants have presented no basis for striking the named portions of the Amended Complaint under Rule 12(f). Defendants offer little reasoning in support of their Motion other than to streamline the litigation, and Defendants fail to explain how they would be prejudiced if this Motion were denied. (Mem. in Supp. at 12.) Accordingly, the Motion to Strike will be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the Motion to Strike and Motion to Dismiss the Remaining Claims in Plaintiff's Amended Complaint.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: January 24, 2024
Richmond, Virginia